UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-22118-CIV-MARTINEZ

OSIRIS LUIS VERDECIA GARCIA,

    Petitioner,

v.

WARDEN, KROME SERVICE
PROCESSING CENTER, *et al.*,

    Respondents.

_____/

## OMNIBUS ORDER

**THIS CAUSE** comes before the Court on two filings by *pro se* Petitioner Osiris Luis Verdecia Garcia: (1) an Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 3] (the "IFP Motion"), and (2) a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). In his IFP Motion, Petitioner asks the Court to allow him to proceed *in forma pauperis* ("IFP") — that is, without paying the $5.00 fee that is typically due when a person files an application for a writ of habeas corpus. (*See generally* IFP Mot.); *see also* 28 U.S.C. § 1914(a) (noting that "on application for a writ of habeas corpus the filing fee shall be $5"). In his Petition, Petitioner challenges his detention at the Krome North Service Processing Center ("Krome") in Miami without being afforded an individualized bond determination. (*See generally* Pet.).

In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (March 30, 2026 Order [ECF No. 4]). Respondents filed their "abbreviated" Response to the Court's show cause Order on April 1, 2026 [ECF No. 7] (the "Response"). The Court has considered the Petition, the Response, the record,

and applicable law. For the following reasons, the IFP Motion is **GRANTED**, and the Petition is **GRANTED in part**.

## I.      BACKGROUND

Petitioner is a native and citizen of Cuba. (Notice to Appear [ECF No. 7-2] 1). In March 2021, a Border Patrol agent encountered Petitioner in Arizona near the United States-Mexico border and determined that he had "unlawfully entered the United States from Mexico." (*See* Record of Deportable/Inadmissible Alien [ECF No. 7-3] 2). Petitioner was then released "by Order of Recognizance pending referral" to an Asylum Pre-Screening Officer "for a Credible Fear Interview." (*See id.*).

Almost five years later, in January 2026, Petitioner was arrested in Miami-Dade County for Burglary with Assault, Domestic Battery. (*See id.*). "An Immigration Detainer (I-247) was issued" for him, and he was processed into the custody of U.S. Immigration and Customs Enforcement ("ICE"). (*See id.*). Petitioner was issued a Notice to Appear before an Immigration Judge at Krome for a March 16, 2026 hearing to show why he should not be removed from the United States. (*See* Notice to Appear [ECF No. 7-2] 1).

## II.      DISCUSSION

### A. The IFP Motion

In the IFP Motion, Petitioner asks the Court to allow him to proceed without paying the $5.00 fee required to file an application for a writ of habeas corpus. (*See generally* IFP Mot.). To support his request, Petitioner includes a financial affidavit averring that he has made $0 in income over the past year and that he has no cash in any checking or savings account. (*See id.* 1–2). The affidavit also notes Petitioner that has no assets, monthly expenses, debts, or dependents and that he is currently incarcerated at Krome. (*See id.*).

In most situations, a petitioner who applies for a writ of habeas corpus must prepay a filing fee of $5.00. *See* 28 U.S.C. § 1914(a). A petitioner can avoid prepaying the filing fee by including an IFP motion along with his petition. *See, e.g.*, 28 U.S.C. § 1915; *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004). A petitioner moving to proceed IFP must submit an affidavit that includes, among other things, a statement of all the assets he possesses and a statement that he is unable to pay the filing fees. *See* 28 U.S.C. § 1915(a)(1).

To decide whether a petitioner can proceed IFP, a court must first determine whether "the statements in the affidavit satisfy the requirement of poverty" such that the "affidavit is sufficient on its face to demonstrate economic eligibility." *See Martinez*, 364 F.3d at 1307 (quotation marks omitted). If the affidavit is facially sufficient, the court must then decide if "the asserted claim is frivolous," *see id.* (quotation marks omitted); 28 U.S.C. § 1915(e)(2)(i), or "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(ii). If a petition presents frivolous claims or fails to state a claim that entitles a petitioner to relief, the court must dismiss it and cannot grant the petitioner IFP status. *See* 28 U.S.C. § 1915(e)(2)(i)–(ii).

Petitioner has satisfied both steps here. At the poverty-determination first step, Petitioner signed an affidavit averring that he is "unable to pay the costs of these proceedings," and he noted in the affidavit that he has no income, bank accounts, assets, monthly expenses, debts, or dependents. (IFP Mot. 1–2). Those averments sufficiently establish that, because of his poverty, Petitioner is unable to pay court fees and costs for the Petition. *See Martinez*, 364 F.3d at 1307.

At the sufficiency-of-the-claims second step, the Court finds that Petitioner's claims are meritorious. *See* 28 U.S.C. § 1915(e)(2)(i)–(ii). As further explained in the next section, because Petitioner is detained under the authority of 8 U.S.C. § 1226(a), he is entitled to a bond hearing, so the Petition is due to be granted. *See infra* Part II.B. Accordingly, having satisfied both

3

requirements, Petitioner qualifies for IFP status and does not have to pay the $5.00 filing fee.

### B.  The Petition

In the Petition, Petitioner challenges his continued detention, asserting that the only valid purposes for civil detention in the immigration context are to "mitigate risk of flight" and to "prevent danger to the community" and arguing that he "is not either one." (*See* Pet. 6). Petitioner also notes the Supreme Court has authorized immigration detention "only where it is [significantly] likely that removal will occur in" the "reasonable future" and implies his removal does not meet that test. (*See id.*). He explains immigration detainees "face severe hardship while incarcerated," with "limited freedom of movement and access to their families." (*See id.* 7). He asks the Court to order Respondents to explain why he should not be released immediately "either with or without bond," as he is being held in violation of the Fifth and Fourteenth Amendments to the Constitution and Supreme Court precedent. (*See id.* 6–7).

In its Response, Respondents explain that the Petition raises four legal questions: (1) which statutory authority — 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a) — applies to Petitioner's detention; (2) whether the Court has jurisdiction to hear Petitioner's claims given the limitations of 8 U.S.C. § 1252; (3) whether Petitioner is entitled to a bond hearing; and (4) if Petitioner is entitled to a bond hearing, whether must he first exhaust his administrative remedies before he receives one. (*See* Resp. 1–2). Respondents argue "Petitioner is subject to mandatory detention under § 1225(b)(2)" because "he was present in the United States without being admitted or paroled," which means that he is not entitled to a bond hearing. (*Id.* 2–3 (footnote omitted)). They acknowledge, however, both that "several Judges in this District have reached the opposite conclusion" and that "this Court's recent decision in *Aguilar Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 WL 2941609, at *3, 8 (S.D. Fla. Oct. 15, 2025)," would control the result here,

"as the legal arguments are not materially distinguishable" on "the issue of which statutory provision authorizes Petitioner's detention."[1] (*Id.* 3–5).

Respondents are correct that the Petition's outcome hinges on whether their authority to detain Petitioner arises under § 1225(b)(2) or § 1226(a). Respondents are also correct that this Court has already answered that question: For "noncitizens residing in" and "apprehended while already within the United States," § 1226(a) applies. *See Aguilar Merino*, 2025 WL 2941609, at *3. That is true because, as the Court explained in *Aguilar Merino*, Congress determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than "noncitizens recently arriving." *See id.* In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, the Department of Homeland Security ("DHS"), interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated," which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (B.I.A. 2025) (adopting DHS's new interpretation). Because that abrupt shift in interpretation "runs afoul of the statutes' legislative history, plain meaning, and

---

[1] Respondents also argue "Petitioner's arrest for Burglary with Assault, Domestic Battery may render him ineligible for release on bond even if the Court decides that his detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2)." (Resp. 2 n.2). Even so, they acknowledge that the effect of Petitioner's arrest on his eligibility for bond is "not at issue upon the instant Petition because Respondents argue" § 1225(b)(2) "is the proper detention authority." (*See id.*). The Court agrees that the issue is not properly decided at this stage and, as a result, does not consider it.

interpretation by courts in" six Circuits over the last three decades, this Court rejected it and instead adhered to the interpretation supported by a "plain reading" of § 1225(b)(2) and § 1226(a).[2] *See Aguilar Merino*, 2025 WL 2941609, at *3. The Court sees no reason to depart from that holding.[3]

Respondents detained Petitioner, who has lived in the United States for five years, after he had an encounter with state law enforcement in Miami-Dade County, not at the border or the port. (*See* Record of Deportable/Inadmissible Alien [ECF No. 7-3] 2). Indeed, when a Border Patrol agent actually did find Petitioner near the border in 2021, that agent released Petitioner on his own recognizance to live in the United States while awaiting a credible fear interview to test his asylum claims. (*See id.*). That makes Petitioner a noncitizen resident, not an arriving alien.

For those reasons, § 1226(a), not § 1225(b)(2), governs Petitioner's detention. *See Aguilar Merino*, 2025 WL 2941609, at *3. And as the Supreme Court has made clear: "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Petitioner is therefore entitled to a bond hearing under § 1226(a).

III.    **CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

---

[2] The Court acknowledges the recent decisions by the Fifth and Eighth Circuits that agreed with Respondents' position. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–08 (5th Cir. 2026); *Avila v. Bondi*, ___ F.4th ___, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026). Of course, those decisions are "not binding here, and" they "contradict[] the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at *2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, they do not persuade this Court.

[3] Respondents note that the government has appealed two decisions from this District that have reached the same conclusion. (*See* Resp. 5). The Eleventh Circuit has not yet decided those appeals, so the Court's *Aguilar Merino* decision remains good law.

CASE NO. 26-22118-CIV-MARTINEZ

1.      The Petition [ECF No. 1], is GRANTED in part to the extent Petitioner asks this Court to direct the immigration court to give him an individualized bond hearing.

2.      Respondents shall FORTHWITH afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. The bond hearing must take place no later than April 22, 2026.

3.      On or before April 24, 2026, Respondent shall file a Status Report informing the Court of whether Petitioner was given a bond hearing, and if so, the outcome of Petitioner's bond hearing and the status of matters relevant to the Petition.

4.      The IFP Motion [ECF No. 3], is GRANTED.

5.      The Clerk of Court is DIRECTED to ADMINISTRATIVELY CLOSE this case pending compliance with this Order and until further Order of the Court.

6.      The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should any additional relief be sought relating to the Petition or this Order.

7.      The Clerk SHALL MAIL a copy of this Order to Petitioner.

DONE AND ORDERED in Miami, Florida, this ___ day of April 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:     all counsel of record
        Petitioner, *pro se*

7